IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JERRY WAYNE SCOFIELD, #305657, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) CASE NO. 2:20-CV-652-WKW-SMD ) |
| REOSHA BUTLER, et al., | ) ) |
| Defendants. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.   INTRODUCTION**

Plaintiff Jerry Wayne Scofield filed this *pro se* 42 U.S.C. § 1983 action. *See* Docs. 1, 2. Thereafter, Plaintiff filed an Amended Complaint, which became the operative pleading in this action. Doc. 7. The Amended Complaint names Ventress Correctional Facility Warden Reosha Butler, Easterling Correctional Facility Warden John Crow, former Alabama Department of Corrections ("ADOC") Commissioner Jefferson Dunn[1], Associate ADOC Commissioner Cheryl Price,[2] and Wexford Health Administrator Celeste Hunter as defendants. Doc. 7 at 1, 2. It alleges that, in June 2020, inmates who tested positive for COVID-19 were transferred from Easterling to Ventress, where Plaintiff is and was confined. *Id*. at 2, 4. Plaintiff does not personally allege that he contracted COVID-19.

---

[1] John Hamm has replaced Jefferson Dunn as Commissioner of the Alabama Department of Corrections. Thus, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Hamm is automatically substituted as defendant in his official capacity. Former ADOC Commissioner Jefferson Dunn remains a defendant in his individual capacity. The Clerk is DIRECTED to update the docket sheet and caption accordingly.
[2] Misspelled in the Amended Complaint as "Sherry Price."

Rather, he claims "the transfer of the deadly disease to [his] camp was unreasonable[] and made Ventress a ver[]y unsafe place." *Id*. at 8. Based on these allegations, Plaintiff purports to bring an Eighth Amendment deliberate indifference claim and Fourteenth Amendment equal protection claim[3] against Defendants. As relief, he seeks monetary damages; for the Court to "tell Warden Butler to be more careful next time[] and call the C.D.C. if anyone tries to put a virus in her camp"; and for the Court to tell Warden Crow "not to release anyone for transfer that has a serious disease or virus that can cause death in another camp."[4] *Id*. at 6.

On October 22, 2020, the Court issued an Order directing Defendants to file a Special Report addressing Plaintiff's claims (Doc. 8), which Defendants did on November 16, 2020 (Doc. 29) and January 4, 2021 (Doc. 41).[5] In their Reports, Defendants move for summary judgment or dismissal and provide evidentiary materials in support. *See* Doc. 29 at 12–13; Doc. 41. Defendants also filed supplements to their Reports as well as responses to Plaintiff's motions for a preliminary injunction with additional evidentiary materials. Docs. 24, 32, 39, 49, 55. On January 5, 2021, the Court issued another Order directing Plaintiff to file a response to Defendants' Reports and other filings with affidavits or

---

[3] Throughout the Amended Complaint, Plaintiff maintains that his Eighth and Fourteenth Amendment rights have been violated by Defendants' conduct. *See generally* Doc. 7. He also states that the Fourteenth Amendment "gives [him] the right to the equal protection of the law." *Id*. at 8. Thus, the Court will treat Plaintiff's *pro se* pleading liberally and, in an abundance of caution, construe it as attempting to state a Fourteenth Amendment equal protection claim in addition to an Eighth Amendment deliberate indifference claim.
[4] Plaintiff also sought a preliminary injunction "for the state to send all the COVID-19 patients back to the camp they came from." Doc. 7 at 5. However, Plaintiff's motion for a preliminary injunction was denied prior to this Recommendation. *See* Docs. 40, 48.
[5] Defendant Celeste Hunter filed a separate Report from the other Defendants.

statements made under penalty of perjury and other evidentiary materials. Doc. 42. The Court received Plaintiff's response on January 28, 2021 (Doc. 46), and he later filed additional evidentiary materials (*see* Doc. 61 at 6–9). In its January 5 Order, the Court notified the parties that, absent any objections, it may thereafter treat Defendants' Reports and Plaintiff's response as motions for summary judgment and a response. Doc. 42 at 3. No objections were filed. Thus, the undersigned will now construe the Special Reports as motions for summary judgment and, for the reasons set forth below, RECOMMEND that summary judgment be GRANTED in favor of Defendants on all claims.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). "An issue is 'material' if it might affect the outcome of the case under the governing law." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of

3

'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

If the nonmovant "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the Court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—

including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3).

"In reviewing whether the nonmoving party has met its burden, the [C]ourt must stop short of weighing the evidence and making credibility determinations of the truth of the matter." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998–99 (11th Cir. 1992) (citation omitted). "Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 999 (citations and internal quotations omitted). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249–50 ("If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

## III.   RELEVANT FACTS[6]

In June 2020, inmates who tested positive for COVID-19 were transferred from Easterling to Ventress, where Plaintiff is and was confined. Doc. 7 at 2, 4. Plaintiff claims that "the transfer of the deadly disease to [his] camp was unreasonable[] and made Ventress

---

[6] The "facts" set forth herein are merely for purposes of resolving summary judgment and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir.), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) ("[W]hat we state as 'facts' … for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.").

5

a ver[]y unsafe place." *Id*. at 8. Plaintiff does not allege that he contracted COVID-19, but he claims that his "dorm has been under lock-down quarantine," which "put [him] under a lot of stress mentally and psychologically," and his fear of getting sick "caused [him] not to be able to eat and keep [his] food down." *Id*. at 9.

Defendants concede that six inmates who tested positive for COVID-19 were transferred from Easterling to Ventress in or around July 2020. Doc. 29-1 at 3; Doc. 39-3 at 2. However, they aver that these inmates were housed under medical quarantine in a specific, designated location that facilitated medical isolation; the inmates' movements were restricted to prevent them from coming into contact with other inmates; and prison officials have taken, and continue to take, extensive actions to protect inmates and staff from the spread of COVID-19 at Ventress and throughout all ADOC facilities. Docs. 29-1; 39-1; 39-3 at 2–3.

## IV. DISCUSSION

### a. The Prison Litigation Reform Act bars Plaintiff's request for damages under the Eighth Amendment.

Plaintiff seeks more than $900,000 in monetary damages. Doc. 7 at 6. However, the Prison Litigation Reform Act ("PLRA") provides that a prisoner may not bring an action "for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]" 42 U.S.C. § 1997e(e). This physical injury requirement "has long been recognized as applying to claims under the Eighth Amendment." *See, e.g.*, *Brooks v. Warden*, 800 F.3d 1295, 1298 (11th Cir. 2015) (holding that because the plaintiff had not

6

alleged physical injury, under the PLRA he could not recover compensatory or punitive damages but remanded for nominal damages claim).

Here, Plaintiff has neither alleged nor provided any evidence that he contracted COVID-19 or suffered any sort of physical injury stemming from the events described in the Amended Complaint. *See generally* Doc. 7 (providing that he suffered "risk" and "fear" of harm, but no actual physical harm). Thus, the PLRA bars his claims for compensatory damages.[7] *See, e.g.*, *Wilson v. Dallas Cnty. Jail*, 2022 WL 1176749, at *2 (N.D. Tex. Mar. 16, 2022) (holding that a prisoner's generalized fear of catching COVID is not sufficient to meet the physical injury requirement of the PLRA and thus damages were barred); *Johnson v. Upton*, 2021 WL 1705221, at *2 (S.D. Ga. April 6, 2021) (finding that prisoner had not alleged a physical injury by stating that he lived in fear of contracting COVID-19 and thus the PLRA barred compensatory and punitive damages).

### b. Plaintiff has not shown that he is entitled to prospective injunctive relief.

To obtain prospective injunctive relief, a plaintiff must demonstrate that a credible threat exists that he will again be subjected to the specific injury for which relief is sought. This requires a plaintiff to make a reasonable showing that there is a "sufficient likelihood" that he will again be injured without relief from the Court. *See City of L.A. v. Lyons*, 461 U.S. 95, 99 (1983); *Indep. Party of Fla. v. Sec'y of State of Fla.*, 967 F.3d 1277, 1280 (11th Cir. 2020) ("When a plaintiff seeks prospective relief to prevent a future injury, [he] must establish that the threatened injury is certainly impending."). Past exposure to harm is

---

[7] Plaintiff does not request nominal or punitive damages in his complaint.

7

largely irrelevant when analyzing claims for declaratory or injunctive relief that are predicated upon threats of future harm. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992). Indeed, "because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Wooden v. Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1283 (11th Cir. 2001).

In way of injunctive relief here, Plaintiff asks the Court "to tell Warden Butler to be more careful next time, and call the C.D.C. if anyone tries to put a virus in her camp." (Doc. 7) p. 6. He also asks that the Warden at Easterling "be told not to release anyone for transfer that has a serious disease or virus that can cause death in another camp." *Id*. Simply put, these requests for prospective injunctive relief are conjectural and hypothetical based on past exposure to speculative harm from the transfer of COVID-19 infected prisoners to Ventress. Plaintiff has not alleged that there is any likelihood of a recurring injury, and the Court finds no reason to create one. As such, Plaintiff's request for prospective injunctive relief is denied.

    **c.**    **Plaintiff has failed to establish a genuine issue of material fact as to a Fourteenth Amendment equal protection claim.**

Finally, construing Plaintiff's *pro se* pleading liberally, it appears he also purports to bring a Fourteenth Amendment equal protection claim based on Defendants' conduct in transferring COVID-positive inmates to Ventress. To the extent Plaintiff intends to establish such a claim, he has wholly failed to do so. To overcome summary judgment on an equal protection claim, Plaintiff must demonstrate that (1) he is similarly situated to

other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001). Plaintiff has done neither. He has neither alleged nor provided any evidence of the existence of any similarly situated prisoners who received more favorable treatment than him or that he was somehow discriminated against based on a constitutionally protected basis. Accordingly, Defendants are entitled to summary judgment on Plaintiff's purported Fourteenth Amendment equal protection claims.

## V. CONCLUSION

Based on the foregoing, the undersigned RECOMMENDS that:

1. Defendants' Special Reports (Docs. 29, 41), which the Court construes as motions for summary judgment, be GRANTED; and

2. this case be DISMISSED with prejudice.

It is further ORDERED that, on or before **August 30, 2023**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District

Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 17th day of August, 2023.

/s/ Stephen M. Doyle
STEPHEN M. DOYLE
CHIEF UNITED STATES MAGISTRATE JUDGE